IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CATHERINE YANIRA ALVARADO LOPEZ, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>JEFFREY N. DILLMAN, et al., )<br>)<br>Respondents. ) | 1:25-cv-2456 (LMB/LRV) |

<u>MEMORANDUM OPINION</u>

Before the Court is petitioner Catherine Yanira Alvarado Lopez's ("Alvarado") Motion to Enforce Habeas Order ("Motion"), in which she seeks enforcement of the Court's January 6, 2026 Order requiring the federal respondents to provide her with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). Although Alvarado received a bond hearing on January 20, 2026 in response to the Court's January 6, 2026 Order, she contends that the Immigration Judge's decision to deny her request for release on bond violated due process. The federal respondents have filed an opposition, and Alvarado has filed a reply. For the reasons stated below, Alvarado's Motion will be granted, and the federal respondents will be ordered to provide her with a new, constitutionally compliant bond hearing pursuant to § 1226(a).

I.

Section 1226(a) governs the detention of certain noncitizens "already present in the United States" pending the outcome of removal proceedings. <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 303 (2018). Although § 1226(a) permits the Attorney General to detain noncitizens during removal proceedings, "the [Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention" either on

a monetary bond or on conditional parole.[1] Miranda v. Garland, 34 F.4th 338, 346 (4th Cir. 2022). The first opportunity is with an immigration officer, who is authorized to release the noncitizen on bond or conditional parole if she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). "If an immigration officer denies bond, sets bond at an amount the alien believes is too high or sets alternative conditions to bond the alien contends are unreasonable, an alien may appeal the officer's bond determination to an immigration judge, giving the alien a second opportunity at release." Miranda, 34 F.4th at 346 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)). The "third opportunity comes if an alien is not satisfied with the immigration judge's decision," at which time the noncitizen "may appeal to the Board of Immigration Appeals ["BIA"] for another review." Id. at 346–47 (citing 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)). "At each step in this process, the government requires the [noncitizen] to prove that he or she is not a danger to the community or a flight risk." Id. at 347 (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)).

In conducting a § 1226(a) bond hearing, an Immigration Judge "may look to a number of factors," including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee

---

[1] As the Fourth Circuit has stated, the Court occasionally uses the term "alien" because Congress has used the term in the text of the applicable statutes and regulations. The Court's "use of the term 'alien' is not intended to express any opinion, pejorative or otherwise, about the [petitioner] in this action or others challenging their detention under our immigration laws." Miranda v. Garland, 34 F.4th 338, 345 n.1 (4th Cir. 2022).

prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "These factors provide a non-exhaustive, but flexible menu of considerations relevant to detention decisions." Miranda, 34 F.4th at 362. And of course, the procedures used by federal immigration officials to deny a noncitizen's request for release on bond always must comply with fundamental principles of due process. See id. at 359 (applying the Mathews v. Eldridge "balancing test to evaluate due process challenges to the procedures used by the government under § 1226(a)").

II.

The following facts are derived from the pleadings, the exhibits, and the audio recording of the January 20, 2026 bond hearing, which the federal respondents have provided to the Court. Alvarado is a native and citizen of Guatemala. [Dkt. No. 1] at ¶ 28. On February 23, 2016, when she was 16 years old, Alvarado entered the United States as an unaccompanied minor. Id. Upon entry, she was apprehended, detained, and then released into the United States, where she has continuously resided for ten years. Id. She was placed into removal proceedings and filed an I-589, Application for Asylum and for Withholding of Removal ("I-589"), but those proceedings were dismissed without prejudice on June 11, 2024. [Dkt. No. 1-6].

On December 7, 2025, Alvarado was arrested for, and charged with, a first-offense DWI in Stafford County and detained at the Rappahannock Regional Jail. [Dkt. No. 1-7]. Although a judge in the Stafford County General District Court released her on a $1,500 bond, Alvarado was detained for an additional three days because of an Immigration and Customs Enforcement ("ICE") detainer. [Dkt. No. 1] at ¶ 28. On December 14, 2025, ICE assumed custody of

Alvarado, transferred her to Riverside Regional Jail, and issued her a new Notice to Appear.[2] Id. ¶¶ 28, 30.

On December 23, 2025, Alvarado filed a Petition for Writ of Habeas Corpus ("Petition"), arguing that she was entitled to a § 1226(a) bond hearing. [Dkt. No. 1]. In response, the federal respondents filed a pleading indicating that Alvarado's Petition did "not differ in any material fashion" from the factual and legal issues presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818-LMB-WEF (E.D. Va.), in which the Court determined that an individual who had been present in the United States for several years was not detained under 8 U.S.C. § 1225(b)(2) but rather detained under § 1226(a), thus entitling him to a bond hearing. [Dkt. No. 4]. On January 6, 2026, the Court entered an Order finding that Alvarado's detention was governed by § 1226(a) and directing the federal respondents to provide Alvarado with a standard bond hearing. [Dkt. No. 6]. The Court also ordered Alvarado's prompt release from custody pending that bond hearing. Id. On January 12, 2026, she married her U.S. citizen partner, whom she had been dating for a year and a half. Alvarado filed a I-130, Petition for Alien Relative ("I-130 Petition") with U.S. Customs and Immigration Services ("USCIS") on January 19, 2026.

On January 20, 2026, Alvarado appeared with counsel via Webex for her scheduled bond hearing before the Annandale Immigration Court.[3] Alvarado argued that she should be released on bond because she presents neither a flight risk nor a danger to the community, citing her strong ties in the United States, steady employment history, minimal criminal record, and

---

[2] On December 16, 2025, Alvarado's counsel reported to U.S. Senator Mark R. Warner that Alvarado "ha[d] not been fed in more than 24 hours." [Dkt. No. 1] at ¶ 29; [Dkt. No. 1-8]. It was only after that submission that Alvarado was served food at the Riverside Regional Jail. [Dkt. No. 1] at ¶ 29.

[3] Although Alvarado's bond hearing was initially assigned to Immigration Judge Raphael Choi, on January 15, 2026, his detained docket was reassigned to Immigration Judge David Gardey. [Dkt. No. 9-3].

4

pending I-130 Petition. Alvarado explained that she has a U.S. citizen husband who has a heart condition and relies on Alvarado for support, two U.S. citizen siblings, and cousins who are lawful permanent residents. She also stated that she has worked for the same manager for six to seven years, has the opportunity to become a general manager, and has consistently paid taxes. As to her criminal history, Alvarado acknowledged the December 7, 2025 charge but noted that the charge remained pending, that she has no prior criminal history, and that the state court ordered her released on a $1,500 bond after finding that she did not present a danger to society. After hearing argument from Alvarado's counsel, the Immigration Judge took a brief recess to allow himself and the Department of Homeland Security ("DHS") attorney to review the evidence submitted by Alvarado's counsel, which they had not yet reviewed.[4] Upon reviewing the evidence, DHS "note[d] danger and flight risk concerns," emphasizing Alvarado's December 7, 2025 arrest and the short timeframe in which Alvarado was arrested, got married, and filed her I-130 Petition. Alvarado's counsel responded, and the Immigration Judge issued an oral ruling:

> After considering the evidence that you've submitted, the court is going to deny your request for bond. I find that you have not met your burden to establish that she is not a danger to the community and not a flight risk. The court's concerned that . . . removal proceedings were dismissed in June of 2024 but [Alvarado] did nothing to legalize her process but instead continued to live illegally in the country. The pending I-130 was only filed after [Alvarado] was released from detention and was about to appear for her bond hearing. The I-130 was filed either yesterday or today with USCIS, and this raises the specter or the appearance that it was done solely for purposes of avoiding removal and that it is not genuine. This raises concerns about whether she would obey orders from the court to remove herself as directed. Given that she also appears to . . . have been working—at least it's not clear that she had work authorization after her I-589 was dismissed in . . . June of 2024. It appears that she has continued to work, and it's not clear that she had legal authority to continue to work. She also married her U.S. citizen husband just this month of 2026. This is not a long-standing marriage. Instead, it appears to have been entered into in a reaction to her being detained and the immigration proceedings being reinstated against her, again raising concerns about whether she

---

[4] Before the hearing, Alvarado's counsel submitted documentary evidence in support of her request for release on bond. The Immigration Judge released the evidence to the electronic record at the beginning of the hearing.

5

would obey the court's orders if she were to be ordered removed. There is no other pending relief other than this I-130 that's been filed so recently in what appears to be a hurry . . . in reaction to the Notice to Appear. Also, [Alvarado] has been arrested for a DUI and has not been convicted but . . . there didn't appear to be any evidence indicating that she does not have a substance abuse problem or that she's sought any kind of substance abuse treatment since this drunk driving incident. Given that the burden is on the respondent to establish that she is not a danger and she is not a risk, under all these circumstances, the court is going to deny the request for bond redetermination and order that she be detained by DHS.[5]

Ironically, even though he found that Alvarado was a flight risk and posed a danger to the community, the Immigration Judge did not direct Alvarado to self-surrender to the Department of Homeland Security, and counsel has informed the Court that Alvarado currently is not detained. Additionally, although Alvarado reserved her right to appeal, the record before the Court reflects that Alvarado has not appealed the Immigration Judge's detention decision to the BIA. Rather, on February 13, 2026, she filed the pending Motion, which seeks enforcement of this Court's January 6, 2026 Order and contends that the bond hearing she received did not comply with procedural due process requirements. [Dkt. No. 18].

III.

Before reaching the merits of Alvarado's Motion, the Court begins, as it must, with considering whether it has jurisdiction to determine whether the federal respondents provided Alvarado with a constitutionally compliant § 1226(a) bond hearing. The federal respondents contend that 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) strip the Court of jurisdiction to review an Immigration Judge's decision to deny bond. The federal respondents also assert that Alvarado failed to exhaust her administrative remedies because she did not appeal the adverse bond decision to the BIA before seeking relief from this Court. For the reasons explained below, these arguments are rejected.

---

[5] This quote is taken from the audio recording of the January 20, 2026 bond hearing. It is an unofficial transcript prepared by the Court.

6

A. Section 1226(e)

The federal respondents first argue that 8 U.S.C. § 1226(e) precludes the Court from exercising jurisdiction over Alvarado's Motion. Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." According to the federal respondents, because Alvarado's Motion challenges the Immigration Judge's discretionary bond decision, § 1226(e) strips the Court of jurisdiction. [Dkt. No. 15] at 2–5.

It is undisputed that "§ 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding [her] detention or release." Jennings, 583 U.S. at 295 (cleaned up). In this sense, Judge Ellis's opinion in Hatami v. Chertoff, 467 F. Supp. 2d 637 (E.D. Va. 2006), which is cited heavily by the federal respondents, is instructive. Hatami involved a noncitizen from Afghanistan who had been convicted in Virginia of domestic assault and battery. Id. at 638–39. After the BIA denied Hatami's request for cancellation of removal, Hatami submitted three consecutive bond applications which were denied because "DHS ha[d] made a prima facie showing of dangerousness" based on "a facially legitimate concern with [Hatami's] behavior." Id. at 639. Hatami challenged the Immigration Judge's bond decision in federal court, claiming that the Immigration Judge "failed to provide a 'meaningful' bond hearing . . . because he relied on the government's 'bare bones allegations' of dangerousness." Id. The district court dismissed his habeas action, finding that § 1226(e) precluded judicial review because Hatami "challenge[d] only the decision to deny bond under the statute." Id. at 641–42 (emphasis added). By using the

7

qualifier "only," it is clear that Judge Ellis did not close off other grounds upon which a noncitizen could seek relief from an Immigration Judge's denial of bond.

Indeed, as recognized by both the Supreme Court and the Fourth Circuit, § 1226(e) does not preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing she received. In Jennings, the Supreme Court made clear that § 1226(e) "does not preclude challenges to the statutory framework that permits the alien's detention without bail." 583 U.S. at 295 (cleaned up). There, several noncitizens mounted Fifth Amendment challenges to 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), contending that they were entitled to periodic bond hearings during the course of their detention. Id. at 286, 312. The Court held that because the noncitizens "contest[ed] the constitutionality of the entire statutory scheme," and because "the extent of the Government's detention authority is not a matter of 'discretionary judgment,'" it was able to "consider the merits of their claims." Id. at 296.

Following Jennings, the Fourth Circuit held in Miranda that § 1226(e) did not prohibit the exercise of jurisdiction where noncitizens challenged "the Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a)." 34 F.4th at 352. Specifically, the court stated that a "constitutional challenge" to the Attorney General's "categorical, across-the-board" procedures "is beyond the scope of § 1226(e)." Id. Taking Jennings and Miranda together, courts in this district have concluded that § 1226(e) does not bar judicial review where a noncitizen asserts that the factors an Immigration Judge employed in denying her request for release on bond failed to comport with due process.[6] See Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 3 (E.D. Va. Feb. 18, 2026).

---

[6] Courts in other jurisdictions have reached similar conclusions. See Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) (holding that § 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law"); Trejo v. Bullock, 2026 WL 598391, at *2 (E.D. Tenn. Mar. 3, 2026) ("[T]his Court's jurisdiction to review Petitioner's bond hearing is limited to whether it satisfied due process or otherwise suffered some defect that rendered it

8

Here, Alvarado "does not seek review or reweighing of the Immigration Judge's denial of bond." [Dkt. No. 18] at ¶ 2. Rather, her challenge is constitutional in nature because she argues that the Immigration Judge failed to "provid[e] the meaningful, neutral, and individualized adjudication required under 8 U.S.C. § 1226(a) and the Due Process Clause of the Fifth Amendment." Id. Specifically, she contends that the facts the Immigration Judge relied upon to deny her bond—including her unlawful status in the United States, her working without apparent authorization, and the timing of her marriage and I-130 Petition—were so lacking in probative value that the consideration of those facts deprived her of a fair and individualized bond hearing. Id. ¶ 56. Because "this is precisely the type of claim that belongs in federal court," Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (cleaned up), § 1226(e) does not strip the Court of jurisdiction to consider Alvarado's Motion.

B. Section 1252(a)(2)(B)(ii)

The federal respondents' second jurisdictional argument is based on 8 U.S.C. § 1252(a)(2)(B)(ii), which prohibits federal courts from reviewing any "decision or action" of "the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [her] discretion." According to the federal respondents, because the decision of whether to release a noncitizen on bond or conditional parole pending the outcome of removal proceedings is committed to agency discretion, § 1252(a)(2)(B)(ii) forecloses jurisdiction. [Dkt. No. 15] at 6–8. This argument is unpersuasive for one simple reason: Alvarado's claim is limited to whether the Immigration Judge's decision comports with due process, and federal immigration officials do not have discretion as to whether to comply

---

noncompliant with this Court's Order."); Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (finding that § 1226(e) does not strip the court of jurisdiction where a noncitizen "argues that the IJ failed to comport with due process requirements when she denied him release on bond"); Garcia v. Hyde, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) ("[C]ourts can review the IJ's decision to ensure that it comported with procedural due process requirements.").

9

with the Fifth Amendment in denying a noncitizen's request for release on bond. Accordingly, § 1252(a)(2)(B)(ii) does not bar the exercise of jurisdiction. Accord Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 4 (E.D. Va. Feb. 18, 2026); see also Miranda, 34 F.4th at 353 n.6 (holding that § 1252(a)(2)(B)(ii) does not bar jurisdiction where the noncitizens "challenge[d] the extent of the government's authority under § 1226(a) rather than a discretionary decision").

C. Exhaustion

Finally, the federal respondents argue that Alvarado failed to exhaust her administrative remedies by not presenting her "disagreement" with the Immigration Judge's adverse bond decision to the BIA. [Dkt. No. 15] at 5. That argument also fails. In Miranda, the Fourth Circuit considered whether a noncitizen asserting a Fifth Amendment challenge to the procedures used during a § 1226(a) bond hearing must appeal to the BIA before seeking relief in federal court. 34 F.4th at 351. The Fourth Circuit concluded that because "no statute applicable to [the claims at issue] provides that administrative exhaustion is jurisdictional," the "district court had discretion to decide if administrative exhaustion is required." Id.; see McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."). Here, the federal respondents have not advanced any compelling argument for the proposition that Alvarado should be required to appeal to the BIA before seeking relief in this Court, and the Court will not require Alvarado to "sit in an ICE detention facility" for months on end while she awaits a BIA decision. Picado, 2026 WL 352691, at *6. Accordingly, "the [C]ourt will exercise its discretion to excuse administrative exhaustion" in this habeas action. Dubon Miranda v. Barr, 463 F. Supp. 3d 632, 643 (D. Md. 2020), aff'd sub nom. Miranda, 34 F.4th 338; accord Diahn v. Lowe, 2026 WL 84576, at *5 (M.D. Pa. Jan. 12, 2026).

IV.

Turning to the merits of Alvarado's Motion, the Court finds significant that the federal respondents' arguments as to the due process claim are limited to the following footnote:

> Federal respondents recognize that earlier in the day that this paper is being filed, Judge Nachmanoff granted a motion to enforce in 1:26cv122, Argueta-Portillo v. Bondi, on the basis that the IJ has considered impermissible factors in denying bond. Federal respondents respectfully disagree with that assessment but, in any event, submit that here the IJ considered proper factors in concluding that Petitioner had not met her burden to establish entitlement to bond.

[Dkt. No. 22] at 3 n.1. That response is remarkably deficient. The federal respondents have not explained why they disagree with Argueta-Portillo v. Bondi or whether Alvarado's circumstances are distinguishable from the facts in that civil action. Moreover, the federal respondents have not pointed to any evidence in the record, cited to any authority, or referenced any portion of the audio recording of the January 20, 2026 bond hearing to support their conclusory assertion that the Immigration Judge provided Alvarado with a constitutionally adequate bond hearing. For these reasons—and for the reasons articulated below—the Court finds that the facts the Immigration Judge relied upon in denying Alvarado's request for release on bond violated due process.

A. Flight Risk

In support of his determination that Alvarado presents a flight risk, the Immigration Judge relied upon three facts, none of which passes constitutional muster. First, the Immigration Judge stated that although Alvarado's removal proceeding was dismissed in June 2024, she "did nothing to legalize her process but instead continued to live illegally in the United States." A noncitizen's unlawful status cannot provide a legitimate consideration upon which an Immigration Judge may deny a request for release on bond under § 1226(a) given that every individual who appears before an Immigration Judge for custody redetermination lacks lawful status. To consider this fact violates both § 1226(a)'s requirement of an individualized hearing

11

and fundamental due process principles. As another jurist in this district aptly stated, "an individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases."[7] Argueta-Portillo v. Bondi, et al., 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026).

Second, the Immigration Judge emphasized that Alvarado likely has been working in the United States without authorization. This is problematic for two reasons. To begin, similar to the previous discussion concerning the consideration of a noncitizen's unlawful status, Alvarado's "unauthorized employment is inextricably related to the unlawful status that has caused [her] detention and request for a bond hearing in the first place." Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026). If an Immigration Judge could consider a noncitizen's unauthorized employment—which typically accompanies a noncitizen's unlawful status—"discretionary detention under § 1226(a) . . . would become a de facto mandatory § 1225 detention." Id. Moreover, no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not. Id. Rather, steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed.[8] This is particularly true where, as here, the noncitizen maintains a

---

[7] The BIA has reached a similar conclusion. In Matter of Patel, the BIA considered whether an Immigration Judge erred in releasing a noncitizen on a bond of $500 rather than releasing him on his own recognizance. 15 I. & N. Dec. 666, 666–67 (BIA 1976). In setting a bond of $500, the Immigration Judge relied upon the noncitizen having "overstayed his student visa" and the fact that "the visa petition of which he is the beneficiary was denied because he lacked a labor certification." Id. at 667. But the BIA found that "[t]hese factors bear little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding." Id. According to the BIA, "[s]uch a broad interpretation of what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings." Id. Accordingly, the BIA released the noncitizen on his own recognizance. Id.

[8] In the criminal context, a steady employment history typically entitles a defendant to release pending trial. See, e.g., United States v. Adams, 794 F. Supp. 2d 989, 993 (S.D. Iowa 2011) (finding that "the Government has not shown by a preponderance of the evidence that Defendant will not appear as required if released pending trial" because "[f]or the two years leading up to

strong relationship with her employer and has promotion and growth opportunities in her field of work. In short, the link between Alvarado's unauthorized employment and any risk of flight is so tenuous that the Immigration Judge's reliance on that fact deprived Alvarado of constitutionally sufficient process.

Third, the Immigration Judge pointed to the recency of Alvarado's I-130 Petition and speculated that the "sole[]" purpose of her marriage with her U.S. citizen partner was to avoid removal. As an initial matter, the Immigration Judge's assertion that Alvarado's marriage was motivated solely by the threat of her removal is unsupported by the record, which reflects that Alvarado had been dating her partner for over a year and began discussing marriage before she was detained by ICE. Moreover, this fact—and the Immigration Judge's speculation as to the merits of Alvarado's I-130 Petition—does not support any reasonable inference of flight risk. Aguilon Fuentez v. Bondi, et al., 1:26-cv-167-AJT-WEF, Dkt. No. 14, at 5 (E.D. Va. Feb. 24, 2026). For all these reasons, the facts relied upon by the Immigration Judge do not provide a constitutionally sufficient basis upon which to have denied Alvarado's request for release on bond based on the conclusion that she poses a risk of flight.

B. Danger to the Community

In support of his determination that Alvarado presents a danger to the community, the Immigration Judge emphasized that Alvarado "has been arrested for a DUI and has not been convicted but . . . there didn't appear to be any evidence indicating that she does not have a substance abuse problem or that she's sought any kind of substance treatment since this drunk driving incident." As a preliminary matter, the Immigration Judge failed to place sufficient weight on the fact that Alvarado had not been convicted at the time of the § 1226(a) bond

---

her arrest she had maintained steady employment . . . and apparently will be able to return to this job if released pending trial").

hearing. Indeed, under bedrock U.S. law, a person is presumed innocent until proven guilty beyond a reasonable doubt. <u>In re Winship</u>, 397 U.S. 358, 361 (1970) ("The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation.").

Moreover, although the Court certainly appreciates that drunk driving can pose a serious risk of danger to society, the Immigration Judge failed to consider two critical facts in evaluating whether Alvarado herself posed such a danger. First, the Immigration Judge did not weigh in his oral ruling that the December 7, 2025 DWI charge was Alvarado's first offense. Consideration of this fact is critical to determining not only whether Alvarado poses a danger to society but also whether there is any condition or set of conditions that will reasonably ensure the safety of the community, such as a restriction on her driving privileges. Second, the Immigration Judge did not consider the fact that a state court judge released Alvarado on a bond of $1,500. Under Virginia law, "a person who is held in custody pending trial or hearing for an offense . . . shall be admitted to bail by a judicial officer, unless there is probable cause to believe that . . . [her] liberty will constitute an unreasonable danger to . . . the public." Va. Code § 19.2-120. Judges may "consider various factors" in making such a determination, including "the nature and circumstances of the offense," "the weight of the evidence," and "the accused's history." <u>Commonwealth v. Berg</u>, 2025 WL 4234316, at *1 (Va. Cir. Ct. June 4, 2025). In evaluating those factors, the state court judge found probable cause to believe that Alvarado's release would not constitute an unreasonable danger to the public. Although the standards of review may differ in a § 1226(a) bond hearing, due process at least requires the Immigration Judge to give some weight to the state court's determination, particularly given that the state court judge is closest to the facts of the underlying offense. In sum, the Immigration Judge's cursory consideration of the

14

December 7, 2025 charge demonstrates that Alvarado did not receive a constitutionally adequate bond hearing.

V.

For all the reasons stated above, Alvarado's Motion, [Dkt. No. 18], will be granted by an Order to be issued with this Memorandum Opinion, which will require the federal respondents to provide Alvarado with a new, constitutionally compliant bond hearing pursuant to § 1226(a) before a different Immigration Judge.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record and mail a copy of this Memorandum Opinion to respondent Dillman, who is proceeding pro se, at his address of record.

Entered this 11th day of March, 2026.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge